IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED FIRE & CASUALTY CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-4309-CV-C-NKL |
| | ) | |
| REALTY TITLE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

On October 3, 2005, Plaintiff United Fire & Casualty Co. ("United") filed a complaint for declaratory judgment which sought a declaration from the Court that it is not obligated to defend Defendant Realty Title Company ("Realty") in the state court action styled *Countrywide Home Loans, Inc. v. Brent Barber, et al.*, Case No. 04-CV-234353. Pending before the Court are the parties' cross motions for summary judgment. For the reasons set forth herein, Realty's Motion for Summary Judgment [Doc. # 76] will be granted and United's Motion for Summary Judgment [Doc. # 78] will be denied.

**I.     Facts**

Countrywide Home Loans, Inc. ("Countrywide"), filed a lawsuit in state court against multiple defendants. Defendant Realty, a title insurance company, is one of the named defendants in Countrywide's state court action. In its 246-page Amended Petition, Countrywide alleges that certain defendants purchased depressed residential real estate

1

and then conspired with other defendants to obtain from Countrywide home mortgage loans on the real estate based on inflated values. Countrywide describes its cause of action as follows:

> This action arises from the misconduct of the defendants, and the errors and omissions of Realty in failing to comply with its duties which damaged plaintiff Countrywide. The defendants engaged in a property investment scheme to defraud Countrywide and to breach contracts with Countrywide. The property investment scheme was accomplished by the failure to reveal to Countrywide that the transactions on which Countrywide were granting residential real estate loans included property flips, double escrows, false appraisals and false loan applications and enabled by Realty's negligence in failing to abide by its obligations. In conducting the subject closings, Realty failed to conform to the standards imposed upon professionals performing its escrow and closing services and, as a result, the defendants' scheme was allowed to succeed. Realty's incompetent handling of the subject closings allowed defendants to fraudulently obtain plaintiff's proceeds.

(Ex. A, ¶ 14.)

Countrywide asserts twenty-eight causes of action in its Amended Petition. Many of Countrywide's claims are for conspiracy and fraud, which it asserts against defendants other than Realty. Specifically against Realty, Countrywide sets forth claims for breach of contract (Count III), negligent misrepresentation (Count IX), negligence (Count XIV), breach of fiduciary duty (Count XV) and negligent supervision (Count XVIII). Countrywide has not alleged that Realty was a knowing participant in the other defendants' scheme.

2

United issued an Abstracters liability policy (policy number 29001439) ("the Policy") to Realty.  The relevant portions of the policy are as follows:

**SECTION I - COVERAGE**

**1. Insuring Agreement**

    **a.**    We agree to pay on behalf of the insured all sums in excess of the "deductible" which the insured shall become legally obligated to pay as damages because of an "error, omission or negligent act" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.  We may, at our discretion, investigate any "error, omission or negligent act" and settle any claim or "suit" that may result. []

. . .

    **d.**    This insurance applies to "errors, omissions or negligent acts" which arise out of "professional services" rendered or that should have been rendered by those insured or by any person for whose "errors or omissions or negligent acts" the insured is legally responsible, and which arises out of the conduct of the insured's business as:

        **(1)**    A title abstracter, provided a specific premium charge is indicated on the Declarations Page hereof;

        **(2)**    Title insurance agent provided a specific premium charge is indicated on the Declarations Page hereof;

        **(3)**    A closing agent performing "closing activities" provided a specific premium charge is indicated on the Declarations Page hereof; and/or

        **(4)**    An escrow agent performing "escrow activities provided a specific premium charge is indicated on the Declarations Page hereof.

The Policy provides the following definitions:

**SECTION VI - DEFINITIONS**

7. "Error, omission or negligent act" means the performance by an insured which fails to meet the standard for performance by a reasonably prudent similarly situated professional.

. . .

10. "Flip transaction" means an act or a series of acts which result or are alleged to result in an inflated sale price or inflated value in connection with real estate financing which does not accurately reflect the price or value which would have been determined in an arms-length transaction between the purchaser and seller.

The Policy also contains the following exclusions:

**2. Exclusions**

This insurance does not apply to any claim based upon or arising out of:

a. Any dishonest, fraudulent, criminal, malicious, intentional, or knowingly wrongful "errors, omissions or negligent acts" committed by or at the direction of any insured.

v. The actual or alleged improper participation by any insured in any "flip transaction."

## II. Discussion

Even though United brought this declaratory judgment action, Realty bears the burden of proving that Countrywide's action against it is covered by the Policy. *Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 792 (Mo. App. 2006). In its Amended Petition, Countrywide sets forth five claims against Realty: breach of contract, negligent misrepresentation, negligence, breach of fiduciary duty and negligent supervision. The Policy stipulates that it covers "all sums in excess of the 'deductible' which the insured shall become legally obligated to pay as damages because of an 'error, omission or negligent act' to which this insurance applies." [Policy, Section I(1)(a).] An "error,

4

omission or negligent act" is defined as "the performance by an insured which fails to meet the standard for performance by a reasonably prudent similarly situated professional." [Policy, Section VI(7).]

Realty argues that each of Countrywide's claims is covered under the Policy, but notes that it need only prove that one claim is covered to invoke United's duty to defend all claims. *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 300 F. Supp.2d 888, 893 (E.D. Mo. 2004) ("The insurer's duty to defend arises when there is a *potential* liability set forth in the complaint . . . [e]ven if some claims in the complaint are not covered, the presence of insured claims triggers a duty to defend.").

Specifically, Realty argues that Countrywide's negligence claim (Count XIV) is covered by the Policy. In its Amended Petition, Countrywide asserts that "Realty had a duty to Countrywide which included duties to act as a competent and reasonable professional." [Ex. A, ¶ 1210.] Furthermore, Countrywide asserts that "Realty failed to exercise reasonable care when discharging its duties and obligations by, *inter alia*, improperly conducting the closing, failing to provide accurate and updated information, and otherwise failing to undertake appropriate due diligence." [Ex. A, ¶ 1213.] Realty contends that Countrywide's negligence claim falls squarely within the Policy's definition of "errors, omissions or negligent acts."

It is well settled that, to extricate itself from a duty to defend its insured, an insurance company must prove that there is no possibility of coverage. *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999)

(noting that the duty to defend is broader than the duty to indemnify). The insurer also bears the burden of proving the applicability of an insurance policy's exclusion. *Ballew*, 203 S.W.3d at 792.

For its part, United argues that none of Countrywide's claims against Realty is covered because each is subject to exclusion "a" or "v" in the Policy.[1]

Exclusion "a" excludes coverage for claims "based upon or arising out of . . . any dishonest, fraudulent, criminal, malicious, intentional, or knowingly wrongful 'errors, omissions or negligent acts' committed by or at the direction of any insured." [P's Sugg. at 13.] And, exclusion "v" excludes coverage if a claim is based on or arises out of "[t]he actual or alleged improper participation by any insured in any 'flip transaction.'" [Policy, Section I(2)(v).]

Coverage is determined by comparing the language of the insurance policy with the allegations contained in the pleadings. *McCormack*, 989 S.W.2d at 170. Comparing the language of the Policy with the allegations in Countrywide's Amended Petition makes clear that neither exclusion is triggered by Countrywide's claims. As to exclusion "a," United argues that it precludes coverage because "the claims asserted are not predicated on any negligence, but are sounded in conspiracy amongst all defendants to carry out the property scheme with the intent to defraud Countrywide." [P's Sugg. at 13.] Countrywide, however, does not assert conspiracy or fraud claims against Realty. In fact, Countrywide, in Count I, specifically "alleges a conspiracy by all defendants <u>other than</u>

---

[1] United raises no other rationale for denying coverage other than via the exclusions.

6

Realty for the purpose of conducting a property investment scheme . . . ." [Ex. A, ¶ 1051 (emphasis added).] Countrywide does not assert a claim against Realty that is based upon or arises out of any dishonest, fraudulent, criminal, malicious, intentional, or knowingly wrongful errors, omissions or negligent acts. Therefore, exclusion "a" does not preclude coverage.

As to exclusion "v," United cites paragraph 14 of Countrywide's Amended Petition as support for the argument that Countrywide alleges Realty participated in flip transactions. Specifically, United points to the following sentence: "The defendants engaged in a property investment scheme to defraud Countrywide and to breach contracts with Countrywide." [Ex. A, ¶ 14.] A complete reading of the paragraph, however, shows that Countrywide alleges liability by Realty separate from the property investment scheme-based liability of the other defendants. The complete paragraph states the following:

> 14. This action arises from the misconduct of the defendants, and the errors and omissions of Realty in failing to comply with its duties which damaged plaintiff Countrywide. The defendants engaged in a property investment scheme to defraud Countrywide and to breach contracts with Countrywide. The property investment scheme was accomplished by the failure to reveal to Countrywide that the transactions on which Countrywide were granting residential real estate loans included property flips, double escrows, false appraisals and false loan applications and enabled by Realty's negligence in failing to abide by its obligations. In conducting the subject closings, Realty failed to conform to the standards imposed upon professionals performing its escrow and closing services and, as a result, the defendants' scheme was allowed to succeed. Realty's incompetent handling of the subject closings allowed defendants to fraudulently obtain plaintiff's proceeds.

(Ex. A, ¶ 14.)

Alternatively, United argues that coverage is inappropriate here because Countrywide's claims arise out of excluded conduct. [P's Sugg. at 15.] In support of this argument, United cites *United Fire v. First Magnus Financial Corporation and Realty Title*, Case No. 06-519-CV-W-SOW (W.D. Mo. Nov. 20, 2006) ("*First Magnus*"), which was also a declaratory judgment action relating to flip transactions. In that case, the court addressed the applicability of an exclusion identical to exclusion "v" in this case. The *United Fire* court found "that the Complaint alleges that Realty Title participated in an illegal flip transaction as an Enabling Title Company. All of the allegations contained in the two Counts against Realty Title are in the context of improper actions taken in the flip transactions." *First Magnus* at 10-11.

The instant case differs from *First Magnus*. Exclusion "v" requires "actual or alleged <u>improper</u> participation" in a flip transaction. [Policy, Section I(2)(v) (emphasis added).] United's inclusion of the word "improper" in the Policy indicates that not all participation in flip transactions negates coverage. It necessarily follows that for an insured to improperly participate in a flip transaction, the insured must have knowledge of the flip transaction. Thus, limiting the exclusion to "improper" participation necessitates an allegation of scienter, or guilty knowledge, to fall within the exclusion. Otherwise, the use of "improper" would be surplusage. *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network*, 401 F.3d 876, 880 (8th Cir. 2005) ("We must resolve any ambiguities in favor of coverage."). Unlike the underlying petition in *First Magnus*

8

where the plaintiff alleged Realty Title was an Enabling Title Company, Countrywide has made no such allegation of Realty's knowledge or intent in this case. Therefore, exclusion "v" does not preclude coverage.

In its Amended Petition, Countrywide asserts five claims against Realty. One of these claims is for negligence (Count XIV), which is covered by the Policy. The Court finds that neither of the Policy's exclusions preclude coverage of Countrywide's negligence claim against Realty. Therefore, Realty's Motion for Summary Judgement is granted and United's Motion for Summary Judgment is denied.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Realty's Motion for Summary Judgment [Doc. # 76] is GRANTED, and

ORDERED that United's Motion for Summary Judgment [Doc. # 78] is DENIED.

    s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: February 2, 2007
Jefferson City, Missouri